Mr. Leon, good morning. We'll begin with you. Thank you, and may it please the court. This court should vacate the district court's order and remand because the district court clearly erred twice in failing to hold a Franks hearing. First, the district court's one-sentence analysis regarding Franks, and it failed to address the most material piece of evidence in the record, Detective Hsu's affidavit. And then second, after failing to address that affidavit, the district court erred again in ruling that Mr. Roland was not entitled to a Franks hearing. I think because the first error led to the second, it's really important to understand it and start with it. Although the district court never analyzed if Mr. Roland's alleged omissions actually satisfied the two-pronged Franks test, which here is materiality and recklessness. Instead, the district court stated that although Mr. Roland alleged Officer Lewis recklessly omitted material information, he failed to offer any proffer or evidence. In other words, we had allegations but no evidence. But at pages four and five of my reply brief, I provide a chart for the court to show that Detective Hsu's affidavit, in fact, supported every alleged omission that we urged below in the district court. And to be blunt here, your honors, the district court cannot fail to address the most material evidence in the record and then rule that we have no evidence in the record. That's a clear procedural error. So now we're on appeal in a posture where the district court hasn't considered the most material piece of evidence in the record. I cannot find any case in this court's precedent in which the district court fails to consider the most material piece of evidence regarding Franks and then this court not only applies Franks in the first instance but then addresses the exclusionary rule as well. Mr. Leon, let me tell you what's on my mind from reading your brief. And that is, you lay out the different omissions at a couple points in the brief. And when I look at them, I think, okay, but why does that undermine the search of the car in any way? So, your honor, that's the second part of our argument. I'm going to address that. But that's really a two-step analysis, right? And the point you're getting at is the probable cause inquiry. And you have to consider the precise legal question here, which is very important. The question is whether the evidence that the officers found would show or had a substantial chance of showing that evidence leading to the real shooter of Banks would be in the Buick. That's the precise question. So, now, when you consider... Isn't the question a little bit different than that? Isn't the question whether or not the search warrant, whether or not there was probable cause to believe there would be evidence of a crime in the car? Yes, your honor. And the Supreme Court has defined evidence of a context as evidence leading to a criminal. And the only criminal at issue here when they apply for the search warrant was the shooter of Banks. So, we have to ask whether evidence leading to the real shooter of Banks would be in the Buick. But when you consider the omissions here, the victim, not Mr. Rowland, but the victim explained to the officers that Mr. Rowland had nothing to do with the shooting. Well, that's a pretty narrow view of what the crime could be in a situation like this, right? This is in the middle of the night in an emergency room. The police don't... They know there's a guy shot there. So, you're absolutely right about that. But they don't know anything about the circumstances. They know what people have told them, okay? But they haven't had time to undertake a full inquiry. Maybe they're gonna learn, you know, later on that morning or in five minutes, somebody's gonna tell them, you know what, that guy at the emergency room we think was involved in that shooting on this street corner in front of the 7-Eleven or whatever. That way, there was a shootout that way. We don't have any idea. So, I don't know that we can, when we evaluate the warrant, and we're thinking about stage one and stage two as you're doing a Frank, that we can define with a lot of precision or maybe more accurately that the Constitution requires us to what the crime is. It could be a lot of different things. That is correct, Your Honor. It could be a lot of different things. But the officers here and the government has only pointed to one potential crime that they could have had probable cause for. So, we have to consider it in that context. And when you consider it in that context and you consider the omissions at issue here, again, they showed a role and had nothing to do with the shooting, nothing to do with the shooter. According to who? I'm sorry? According to who? According to the victim. Right. Did the police have to take their word at that? Of course not. But they have nothing else to suggest otherwise. They would just be suspicious. Well, they got blood in a car and they got two guns in a car. Yes, Your Honor. And we argue that blood and guns are not always per se evidence leading to a shooter. And you have to consider context. But you seem to be arguing that they have to show probable cause to believe that Roland was involved in this crime. No. And they're not searching Roland or arresting Roland. They're searching the vehicle. No, Your Honor. We're not arguing that. We're arguing that they needed evidence or they need to have a substantial chance of finding evidence in the Buick leading to the shooter. Yes, the victim's statements here exculpate Roland, but they also show that his car had nothing to do with the crime scene. That's the second key part here that the government fails to address, is that how can evidence leading to a shooter be in a car that had nothing to do with the crime scene? Let me adjust the fact pattern on you a second, okay? Sure. Because I'm interested in how you'd analyze this. Let's suppose, let's suppose, for instance, that after the police showed up, Mr. Banks is being attended to by the doctors and what he's doing is he's driving home. And he goes, he's ready to drive home. Would the Fourth Amendment compel the police department to allow him to get in his car and drive home? I think the answer, Your Honor, is whether they have probable cause to search it. And we submit no, because he had nothing to do with this crime scene. His role that night was limited to one thing. Here you are back to Mr. Roland, though. Yes, but it's important to understand that Mr. Roland only went from a location away from the crime scene to the hospital. But it's not what Mr. Roland did or didn't do. It's whether or not the car, when a victim of a gunshot wound at 3 o'clock in the morning, shows up at the ER and there's blood and guns in the car. It doesn't matter if I disagree, because once you exculpate Mr. Roland, the next question is what Your Honor is getting at. See, time doesn't allow, the circumstances don't allow the exculpation of Mr. Roland. They allow Mr. Roland to offer his account to tell the police, but how do the police know what happened here? They don't. They know what, they know they got a guy in a hospital that shot, who said, my buddy Roland drove me in here. Roland told the police what he, but the police don't have to just accept all that. No, and I think we're going in circles at this point, Your Honor. I do agree that the police do not have to accept it, but they need something else to show so, right? They can't just guess and then go search his car. That's not what the Fourth Amendment allows. They have to have a fair probability or So what if the argument is no more than the victim's blood, the victim of a shooting, we believe, his blood is in the car. That's evidence of a crime, okay? It's in the car and we need to get a warrant. So two things, Your Honor. It's not evidence of a crime as the Supreme Court defined it and even the officers here suggested that... When you say Supreme Court, what do you have in Hayden? It's a Supreme Court case. I cited it in my brief, the reply brief. So, but to be clear here, even the officers, after they searched the car, they released it to Mr. Roland's girlfriend. If this was evidence of a crime, they would have kept the view. They would have impounded it. They didn't need the blood and there's no way to think that the blood would lead to, one, apprehending the shooter and convicting the shooter. And if the government is right on this point, I want to make this very important point, that any time Roland bleeds from this shooting wound, it would be evidence of a crime that the government could get weeks after the shooting. The blood itself is a causal result of the shooting, but it's not anything that would be helpful to the officers in convicting a criminal and finding a criminal. And I know that's... Why isn't it evidence he was shot? It is, Your Honor, but it's, you know, Roland going... So why isn't that evidence of a crime? If the blood is, if he goes to the ER after he's been shot and his blood from the gunshot wound is in the car, that seems like evidence of the shooting to me. Yes, Your Honor, but just imagine this situation, this situation. Mr. Roland goes to Walmart after the shooting to get gunshot wound ointment. That's evidence that he was The difference is, it's a causal result of the shooting, but it's not evidence leading to the shooter. And I see that I'm out of time. Okay, very well. Thank you, Mr. Leon. Okay, we'll hear from the government. May it please the court. Samantha Spiro on behalf of the United States. This court should affirm the district court's denial of the touchstone of the Fourth Amendment is reasonableness. And here it was clearly reasonable for police to believe that they would find evidence of a crime in the defendant's car. The car drove a shooting victim from the area of a shooting and police and that shooting victim had three gunshot wounds. Police saw in plain view a bloodstain and two guns, specifically one which was a MAC-10 style pistol with an extended round magazine and a potential suppressor. Ms. Spiro, does the record show that the officers were able to see those two gun alterations when they observed the firearms through the car? They observed the firearms and they observed the two extended magazines and what they thought appeared to be a suppressor. I see. Okay. And so they saw those in plain view. And under Warden v. Hayden, which is what Defense Counsel just cited, there was a fair probability of evidence being found in the car that would lead to the apprehension or conviction of a criminal. And so under those circumstances, police had probable cause at that point to search the car and they didn't need a warrant. They could have used talking about the warrant. Does the record indicate whether there is a standard operating procedure in Indianapolis that an officer should get a warrant in those situations? I understand you didn't need one, but is there a standard operating procedure that the officers had to follow or should have followed in getting in touch with the magistrate? The reason I ask is your brother has suggested to us that there was something nefarious about getting the warrant. I just wondered if this was just, this is the way the Indianapolis police just operate. So I don't know if it's a standard police practice, but I do know that the statement that there's something nefarious about it is incorrect. The Seventh Circuit precedent, as well as other precedent, does favor police obtaining a warrant. And courts have said that it's prima facie evidence of good faith when they do that. And so they didn't need a warrant. They could have gotten into the car under the automobile exception, but the fact that he, Officer Lewis, nevertheless saw one is evidence of good faith. And the defense points to, the defendant points to certain evidence or omissions that police left out of the warrant affidavit. But it's well established that police don't have to include every detail that they know in a warrant affidavit. And as your Honor pointed out, none of those details would have negated the substantial probable cause here. The fact that the defendant drove the victim to the hospital, for example, that was included in the warrant. In fact, it was the only thing that was said specifically about the defendant in the warrant, in the warrant affidavit at all. Regarding the other detail that the shooter was unknown, the warrant said absolutely nothing about the identity of the shooter, and it certainly did not incriminate the defendant. Do we know the precise time when the officers ascertained that Mr. Rowland was a convicted felon? Not, I don't know the exact hour and minute, but... Sequence of events. Yes, they ascertained he was a felon after they conducted an interview with him, subsequent to the search of the car. But it's our position that they would have discovered that fact, regardless of the search of the car, because they already knew, they saw in plain view, that the guns were in the car, and they would have conducted an interview with him regardless, because of that, and because he was a material witness to the aftermath of the shooting. I know he was driving the car. Was he the registered owner? He was, yes. So I would just finish and say that the warrant said nothing about the identity of the shooter, it didn't incriminate the defendant, police were looking for evidence of a crime, and they had probable cause to search the car, and then, there's also no evidence of intent or recklessness on the part of Officer Lewis in this case. The SHU affidavit does contain additional details that are not in the Lewis affidavit, but those affidavits are consistent with each other, and as I've said, police are not required to include every detail that they know in a warrant affidavit. If your honors have no further questions, the United States will rest when it's brief. Very well. Thank you. Yep, thank you.  Thank you, your honor. I just want to go back to what evidence of a crime is under the Supreme Court's precedent. The Supreme Court has said, and this court has said multiple times, that it's evidence leading to a criminal, and in this case, the only criminal that the government has pointed out that there could have been probable cause for was the shooter. And when you consider the omissions, and that Mr. Rowland had nothing to do with this shooting, at least the evidence showed so that the officers had at that time, he had nothing to do with the shooting, the shooter, or the crime scene, and he only went from a location away from the crime scene to the hospital. There's not a fair probability that evidence leading to the shooter would be in the bureau. Okay, very well. Mr. Leon, thank you very much. Thanks to the government as well. We'll take the case under advisement, and that will conclude today's arguments. Court will stand in recess. Thank you.